The case is 25-3065 Potts, or I apologize for any mispronunciation, versus Unified Government of Wyandotte County in Kansas. Counsel for appellant, if you'd make your appearance and proceed, please. Thank you. Thank you, Your Honor. May it please the Court, and obviously your questions are far more important than anything I would try to ram in in a rebuttal, but I'd like to reserve about two minutes for rebuttal, if that's possible. Your Honor, it's Quentin Templeton on behalf of the plaintiffs who were victims of coordinated and repeated rapes, sexual assaults, and kidnappings by the very people who were sworn to serve and protect them, the police and their community. Mr. Templeton, these allegations are horrific. I accept that. Let me ask, however, as it relates to what is deemed to be, I think in the complaint, one of the principal perpetrators, and I may mispronounce this, but Golubsky. Why isn't this case moot as it relates to him, and how do we have jurisdiction over a dead person? Yes, Your Honor, and this is sort of kind of a tail on the dog here in this particular case. But the substitution issue, and I think it's pronounced Golubsky, but I don't know that it necessarily matters. Well, there is a substitution issue. I'm aware of that.  But it seems to me that right now, as we stand here, we have a dead person in this case. There is no substitution below 125, and 43 says it permits substitution in a situation unlike this one, because here you had the appellee who died before entry of judgment. So I am scratching my head as to how we have any jurisdiction over him at all. I think you do have jurisdiction over him, Judge. On what basis? The reason for that is if you look at Grand Bouchie, I think is how it's pronounced, this court's opinion from the 90s where the court said that because the personal representative of the estate wasn't served, then the certificate of death or the notice of death didn't start the clock for the time for substitution. That's an issue that would be dealt with in the district court. We're not in the district court. That fight should have played out there. We're not fighting that here. We have no authority to do that now. I mean, as it relates to Rule 25, do we? I think the court does with our motion for substitution, and the reason is our motion for substitution is timely because there hasn't been a clock on exhaustion of it, and the— What is the rule predicate for us to act in that regard? I think, Your Honor, I think this is a factual scenario that isn't contemplated by the rules. We're a law court. I get it.  And so, okay, I didn't mean to interrupt. No, no, no, no. I think it's an important issue. I thought there was a notice. There was a notice of death that was filed, but it wasn't properly served on the non-parties to the case, which this court's prior opinion makes clear is a requirement, and, in fact, Rule 25 expressly says is a requirement that it must be served on non-parties pursuant to Rule 4, and the importance of that in this case can't be understated because plaintiffs don't know who the heir or heirs of the estate might be. Well, why wasn't this argument made below, and let me add on to that, which is to say that what basis did the district court have to enter judgment against Mr. Golubsky? I know it mentioned the fact that there might be a later substitution, but there wasn't a substitution. So, I mean, it seems to me it's sort of jurisdiction 101 that you exercise on the merits when there is a basis for jurisdiction. There wasn't one. So how could the court actually enter judgment against him? Well, I don't think the jurisdiction— Not against, but— I'm sorry? Not against him, but in favor of him. Sure. I don't think the existence or nonexistence of Golubsky in this particular case changes plaintiff's rights moving forward against the other defendants. Kansas conspiracy law doesn't require that every conspirator be named in the conspiracy. But to directly answer the question on the substitution issue, the district court didn't address it. And candidly, the district court's opinion— or we were waiting on the district court's opinion until— for several months until his suicide occurred. And then the district court issued its opinion. No defendant filed any sort of motion or brief to dismiss out that party. And so there was nothing before the court until there was a motion to withdraw, filed by Golubsky's counsel. And at that time, our notice of appeal had been filed, and the magistrate denied it pending the appeal. Well, I'm interested to hear your point about essentially your case goes forward irrespective of Golubsky. Well, that leads me, however, to the question of your argument about a stop hole based upon these alleged threats of the defendants. Well, did you mention any defendant beyond Golubsky who made threats against your clients? Not against all plaintiffs. And we actually have a graphic in our opening brief, Doc 20 at page 29, where we have a graphic sort of drawing some of the lines where some of the contact with various co-conspirators are. But again, going back to Kansas law, each co-conspirator and the threatener of those or the individual who commits the threats don't even have to be named under Kansas law. Well, all right. You say that. But in front of us also are motions to certify, right? Correct. And where under Kansas law as it stands now, does it say that you have the benefit of co-conspirator attribution for purposes of this stop hole argument that we're talking about, which as I understand it is threats were made and until the main perpetrator, anyway, Golubsky was dead, everyone was afraid to come forward. Well, where under Kansas law as it stands now, do you have a predicate for that argument? Well, the complaint actually doesn't limit itself to the threats committed by Roger Golubsky. And, in fact, we have – Who else made threats then? Well, we have two individuals that interacted with two of our plaintiffs. We have another who became the police chief, and then we have – Please be specific because I didn't see. Sure, absolutely. And interact is not the predicate. I agree. It is threats. I agree. We have defendant by and defendant kill were the two who directly interacted with plaintiff Miller. There's – They took Miller to see her deceased father, is that right? Correct, and then took her back to – Where was the threat there? That's pretty standard practice. Maybe it was heartless to do it in that circumstance, but where was there a threat? I don't think the threat was in taking her to the morgue to see the charred corpse. I think the threat was back at the police station when they spent, I think it was some 20-some hours, interrogating her and accusing her of having a sexual relationship with her father, culminating in the sexual assault, and then dumping her off the next day. Now, we don't have with plaintiff Miller the kind of gun to the head, if you tell anyone I'm going to kill you. But what we do have is these are not isolated events. And we have sort of in the constellation of probability, we have contemporaneous at the time of indictment and after newspaper reports discussing these acts by Golubsky and others, that this is a protection racket being run through the police department in the unified government. We also have other police officers named in the complaint. We have four police officers named in the complaint who say either, I tried to come forward and I was demoted or fired. I tried to come forward and I showed up on calls, domestic violence calls, without any backup as sort of a sign of don't say anything. The sorts of examples you're giving there seem to me to diminish your main point. Because if there's this internal cover-up, then if someone made an accusation, one of the plaintiffs had made an accusation, they wouldn't worry about it because they didn't need to threaten these people because they knew nothing would come of it. But to get to my concern, I was looking for some allegation that they conspired, that there was a conspiracy to keep the victims from making complaints. And the only actions in that regard that I saw in the complaint were actions by Golubsky, nothing showing that he was conspiring with others or that others were even doing parallel things. We do have allegations against others and the conspiracy across the police department. You do describe a conspiracy. What I'm referring to is a conspiracy to threaten people. That's the only issue relevant to the statute of limitations concern. Correct. My understanding is that there was a conspiracy to prevent the plaintiffs, to scare the plaintiffs out of making any allegations for this 20 years or whatever. Correct. And candidly, Judge Hartz, I think it permeates the complaint. I think it is hard for me. It has taken me a long time to fully appreciate what feels like a different world where our plaintiffs have lived. These aren't isolated incidents. Two of our plaintiffs, Sondra Newsom and Nico Quinn, are intertwined in terms of acts that are occurred and have occurred for a long period of time. And then Nico Quinn continues to be stalked by Roger Golubsky, yes, but with other overt threats that he's being aided by others in the government. He's being aided by the prosecutors. And if you don't—  You said other overt threats. You're talking about threats by Golubsky? Threats by Golubsky that he's working with others in the police department. I think you're going to ask what I was doing. Actually, I'm going to laugh for a while, yes. A follow-up on the point. What your dialogue with Judge Hartz underscores for me, and this is where I see a problem, and then I'm going to move on to a related issue, if I may, which is simply that there's a distinction between, again, this is apparently a horrific number of acts of harm. That harm is alleged to have taken place in the context of a conspiracy. But what really, for the moment, in order for you to act on that harm, we have to get past the limitations issue. And so these allegations that these people are inflicting harm on the rape, all these sorts of things on the plaintiffs, that doesn't answer the question of why didn't they talk. I mean, granted, different world, but the law requires you, if you're harmed, to do something about it. And so in this context, the only wedge into why they didn't talk is the dead man. And a person who, at least by your acknowledgement, could be out of the case and you still go forward. Well, I wonder whether that's true, because you haven't given us anybody else who said expressly, like Galluzzi, you talk or you're going to pay a consequence, and therefore they don't talk. And I think that frames the appeal, Chief Judge Holmes, that can co-conspirators benefit from the threats of another conspirator? And Kansas law is crystal clear on this point, that the bad act or the act of one is the act of all under basic Kansas conspiracy law. Yes, but that law applies in a context of criminal conspiracies. We're talking about whether you can transpose that law into the context of estoppel here. And as you acknowledge, by virtue of your motion to certify, it's not clear that you can. And that's what leads me into a second point, which is, is it not the case that you filed the motion to certify only in the context of the motion for relief from judgment, not at the time of the motion to dismiss? We did. And the reason for that is, is that the district court completely departed from Kansas law. We have the district court citing the Weinstein case from New York, which has been sort of universally rejected, and then the district court inventing estoppel by duress, which is not expressly identified in Kansas law, and then criticizing plaintiffs for not briefing estoppel by duress. And following the district court's order, we said, well, if the district court thinks this is an issue, then let's go to the Kansas Supreme Court and see what they say about it. And the district court denied it. But, but, so you're saying the Kansas law is clear on the question of estoppel by threat? I don't think there are any cases I'm aware of that have decided that estoppel by threat applies. We don't have a Kansas case of police officers or others threatening to kill people and thereby stopping the statute of limitations. Or doing any other harm. And so, so I guess the point I'm getting at is by virtue of not doing this in the context of the motion to dismiss, that at least brings to mind the legion of cases that we have that say that, you know, when you lose and then file a motion for dismiss, that really puts you behind the blocks in terms of getting one to consider a motion to dismiss. Sure. And we're not appealing his denial of the motion to certify. And we filed a separate. Well, you're saying it here. And I'm saying, why shouldn't you be behind the blocks here? Well, actually, I am not aware of a case where a party didn't seek certification to the district court and then did to the Court of Appeals after a motion to dismiss order. I'm not aware of that authority. That seeking it to this court. If I was giving you a 28-J, which I won't. The reality is there are cases. OK, I'm sorry to interrupt. Go ahead. You're not aware of what case? That coming to this court and seeking certification of this court, there's a prerequisite that there is a motion to certify prior to a motion to dismiss. I'm well aware of this court's prior authority that not seeking a motion to certify prior to dismissal. This court has sometimes found that dispositive and refused to acknowledge it, but at other times has nevertheless acknowledged certification. And I apologize if I misspoke. I wasn't saying it was a prerequisite. I was saying that it could work against you. Absolutely. And we recognize that. Of course. So let me ask you. I have found Kansas case law that talks about estoppel in the context of duress and suggests that it may be proper. I'd start with it's a Kansas Supreme Court case. It's 156 Kansas 258. It's an old case, but, you know, it hasn't been overruled. And there have been cases subsequent to that that have cited it, including I believe Judge Crabtree in federal court talked about it. If. If the law surrounding estoppel by duress is unclear at this point and we don't have any briefing on it, but I think the Kansas courts have said it's a possibility. How do we deal with it here at the appellate level, given it wasn't briefed? Those cases weren't discussed. And you're asking for certification about something that seems to me the Supreme Court, the Kansas Supreme Court has already decided. So now here at this level, what do we do with that case law? Well, I think this court applies that case law. It applies Kansas laws. The Kansas Supreme Court has articulated it. Well, the problem is, is it's been distinguished and and there's some suggestion that maybe it only applies in contract cases. And it's not really clear to me, frankly, how to apply it here in this context. I think that's one of the reasons why the motion for certification is important or could be important for the court if the court has questions about whether or not it exists. But I also think it's important to frame those cases with Kansas notice pleading requirements that it isn't. Kansas State Court is a notice pleading state, and most of those cases are discussing that estoppel and stopping a statute of limitation is a fact question at summary judgment, not a 12B6 plausibility analysis. So if estoppel applies, then procedurally, how do you view this case going back to that? I mean, what does it look like when it goes back to the district court, given your main defendant, as Chief Judge Holmes has pointed out, is dead? What does that look like then? If this court reverses and remands all defendants, which I think is proper, if the court did that, then defendants could file a motion or the estate of the individual, or I guess he actually has an heir that's taken over all of the assets and assigned the estate, could file a proper motion at that time. If this court struck that defendant and said that this court didn't think it had jurisdiction over Golubsky at the time of the appeal and so is striking the defendant and remanding the rest, then we can move forward with the case. And defendants, if they thought there was a missing conspirator that prohibited a statute of limitations defense, could raise it at that time. But there would still be hanging out and waiting in the wings the notwithstanding clause issue. And then, sorry, I'm pushing it here. I know it's my turn. We've got time. But the statute of limitations, does it begin to run when Golubsky's arrested in 2022, when he dies in 2024, or does it matter? Well, that distinguishing characteristic doesn't matter for our purposes. The Rock Nation Bereshek-Pamiki brief articulates that they don't think the statute starts to run until after he's dead, that his existence – But that argument wasn't in your – We didn't raise that because we don't need to. It's not a hill we need to die on. We filed – let's see, he committed suicide the morning of jury selection on September 15, 2022, and we filed November 3, 2023. And we allege that the reason why we're waiting in our well-pleaded complaint of – let's see if I have the number right here for the court – 138 pages, a comprehensive complaint, that the reason that they've waited was out of fear. And it's our position that the district court weighed that and made the determination that – I think the phrase the district court uses is reasonably rely, defendants raise or articulate factually unsupported allegations, which is classic weighing of a well-pleaded complaint. So to directly answer your question, Judge Garcia, the day that the statute starts to run, I think at the earliest is at the date of death, of suicide. And we're clearly timely. Assuming the notwithstanding clause issue isn't addressed, we're clearly timely within that. Thank you.  Of course. Mr. Cooper, we'll be liberal on the time if you need it. I'm hoping I don't. Okay. I'm going to go where you lead me, judges. May it please the court, David R. Cooper on behalf of the Unified Government of Wyandotte County and Kansas City, Kansas, and Chiefs of Police Tom Daley, James Swofford, Ronald Miller, and Terry Ziegler, and Detectives Dennis Ware, Michael Kill, and Clayton Bye. And for a nitpick, Terry Ziegler was a detective before he was a chief. And what is your view of the mootness of Officer Golubsky and what's your theory as to why it would be moot as to him? I raised it in my principal brief that it is moot because they had until March 11, 2025, in which to file their motion to substitute. They didn't. Well, they say they were served properly. Pardon? They say the time that you say expired hadn't started because they hadn't been served properly. I disagree with that. Their clock was running from when I filed the suggestion of death on the record on December 11, 2024. Their argument is the clock never started because somebody else didn't get served, that somebody else was neither a party or a non-party nor a representative. So all the plaintiffs were served is what you're saying. Correct. The plaintiffs were served. So their claims ended. Someone who wasn't served might be able to bring a claim. If Matthew Golubsky wants to come back now and say, please, I want to be a defendant for my deceased father, the cases they cite would allow him to do that. A plaintiff for his father. Pardon? I'm sorry. Never mind. Yeah. The deceased person was a defendant in this case. So by operation of Rule 25, they must be dismissed. Mr. Golubsky had already been dismissed by operation of the ruling on the merits of the statute of limitations. Why does Rule 25 even matter now? It doesn't. Even if you failed to do what you did, we're sitting here in the Court of Appeals with a dead man. I agree with you. There is no way under Rule 43 that there's no mechanism under Rule 43 to substitute. None of the provisions allow it. He was dead before judgment was entered, and he was not a potential athlete. So none of those provisions apply. And so that should be dispositive of the case, but that certainly addresses the motion for substitution. And I guess to be specific so that I'm addressing, and I know that we're making a record as well, under Rule of Appellate Procedure 43, sub A1 doesn't apply because Roger Golubsky died before judgment was entered. He died December 2, by the way, of 2024. The suggestion of death was filed December 11. Under sub A2, Golubsky's not a potential appellant, and we're not dealing with a notice of appeal filed by his attorneys. And that's the prerequisite for A2 to have any application. And then A3 doesn't apply, again, because Mr. Golubsky died before judgment was ever entered. With respect to the broader claims and the application of the statute of limitations, we do have to get specific about what was the conduct that is alleged in the complaint and when did that conduct occur. My examination or analysis of Kansas law as it applies to equitable estoppel, applying to the statute of limitations, they apply traditional principles of equitable estoppel where there's an act or a representation by, in this instance, the defendant that a plaintiff reasonably relies on to refrain from filing their lawsuit. The plaintiff's brief admits they all knew that their rights were violated when the violations occurred. And those violations, according to the complaint, occurred to Ms. Howkes in 1992, to Ms. Newsom in 1994, to Ms. Quinn between 1994 and 2012, to Ms. Williams in 1999, and to Ms. Miller in 2002. And by the way, Ms. Miller has absolutely no contact whatsoever with Mr. Golubsky, at least according to the allegations in the complaint. I'm sorry, Mr. Lee. Those dates were when what happened? The bad acts. Okay, the bad acts. And that includes the threats and intimidation alleged in the complaint. Judge Garcia alluded to Kansas case law that allows estoppel by duress. My question would be twofold. First, is duress the same thing as estoppel by threats? Are they the same thing, one? And two, what is your view of the applicability of that case law as it relates to estoppel by duress? If it's the case I'm thinking about, no, because that was a contract case. If I'm remembering the one that he's citing, the 159 Can case. But it dealt with criminal prosecution. I mean, the threat was, we're going to prosecute you if you pursue your claims. I mean, here we have, I mean, you say bad acts. I feel like that's minimizing what happened. Some of these women were raped. They were victimized over the course of years. Not by any of my clients. Well, only because of a death. I mean, Mr. Golubsky's dead. True. But again, the statute of limitations analysis will still apply is, was the delay in filing the lawsuit based on the threats alleged reasonable? And I'm looping back to your question, Judge Holmes, which is, I believe the broad language of Kansas law would at least allow for the concept of estoppel by duress, or estoppel by intimidation, because the language speaks to, was there an act of representation or silence in the face of a duty to speak that the plaintiff then reasonably relied upon to refrain from filing a lawsuit? So you do think that that case that Judge Garcia is citing would be, could theoretically be applicable? I think just general, the general cases that are actually cited in our brief, and I did not cite that one, I know, with respect to, and the quotes that I included in my principal brief say, acts, representation, or silence. Okay, well then. And so we're dealing with acts. Okay, but then that leads into a second question, which is, are, whether the other officers, whether Golubsky's conduct can be attributed to the other officers under conspiracy attribution. In other words, it's a, so you do not believe Kansas law has spoken on that question? No, I've found no instance where Kansas law has addressed a statute of limitations defense applicable to conspirators who, based upon the acts of an unnamed or unindicted co-conspirator. I looked, didn't find any that fit that category. But what I also, and this is in Judge Krause's decision and it's in our brief as well, which is when you're applying estoppel by duress or estoppel by intimidation, the estoppel period stops at the end of the threats. And the plaintiff's argument is basically just, by just being alive, Roger Golubsky was a threat to these women, whereby from the four corners of the complaint, their last contact with him by any of them was in 2012, 11 years before the complaint was filed. Well, I mean, if the complaints of vermis are construed in light most favorable to the plaintiffs, Golubsky was a bad guy. And if Golubsky says he's going to kill you if you speak, and he appears to still be riding high in the police department, why would you, I'm not sure it would be irrational to believe he'll come for me if I say something. First, that's not a reasonable inference to draw from anywhere in the complaint. Which part is not? That he's still riding high in 2012 and beyond in the police department. He retired in 2010. But to Chief Judge's point, I mean, isn't the only way to find out whether the threat exists is to call him out on it? I mean, you're rolling the dice, aren't you? No. And that's because, first off, we start with the analysis that Judge Krause actually applied, which is from the four corners of the complaint, can we determine the statute of limitations applies? Was this complaint filed more than two years after the causes of action accrued? The plaintiff has conceded those causes of actions all accrued in 2002 or before. So clearly more than two years before the November 2023 complaint was filed. Then, from the four corners of the complaint, do the plaintiffs plead themselves into an estoppel situation? And the answer to that is no, because they do not plead a plausible threat by Roger Golubsky to anybody beyond 2012. And, in fact, Ms. House's last contact was in 1992. Ms. Newsom's was in 1994. Nico Quinn's was in 2012. Ms. Williams was in 1999. And Ms. Miller never met Mr. Golubsky. At least from the four corners of the complaint. So there's no way to bootstrap any of those in terms of a plausible threat or intimidation beyond 2012. And the cases, the Jaso case and the Vergara v. Chicago case, all speak to, hey, a mere threat or intimidation is not enough to invoke estoppel, period. But even if it were, and these are the Kansas cases that speak to estoppel, it stops with the last act, last threat. Well, even, let's assume that the threat did linger until Mr. Golubsky's death. There would still be an issue, right, of attribution of his conduct to the other officers. Absolutely. Because, and this is detailed beginning on page 11 of my principal brief, but when we're talking about where my clients are mentioned, just mentioned, let alone any allegation of what did they do, the only allegations against Chief Daley are that he was the chief until 1994 and he attended a meeting where Plaintiff Newsom was present. Nothing else. Chief Swofford, there's no allegation of any conduct by Chief Swofford other than he occupied the seat of the chief of police. Ron Millard, same thing. No allegation of any conduct by him other than he served as the chief of police. Dennis Ware, the allegations with respect to him was that he was present when Niko Quinn was presented a photo array regarding the homicide of her, I'm trying to remember if it was cousin or nephew, in April of 1994. Terry Ziegler is alleged, well he was the lead detective on the homicides by Ms. Newsom's twin sons. And he was alleged to have been Roger Golubsky's partner out in the car during the two occasions that she was with him in 1999. The occasion she was raped by him. That's her allegation is that Mr. Golubsky said Ziegler was out in the car. No conduct by or no statement by Ziegler. Michael Kill and Clayton By were alleged to have taken Ms. Miller to the morgue and to have interrogated her for 19 hours. And it's alleged that Michael Kill propositioned her. They described that as a sexual assault. If you want to infer the sexual assault, but there's no threat or no ongoing contact beyond that night. So that's the last contact in 2002. And I'm just putting the bow on it. None of the allegations of the complaint allow the estoppel by duress to tie into any of my claims. When you threaten somebody. Don't talk or I'll kill you. That's going to have an impact on you for some period of time. You say that the cases don't allow that sort of extension of time. At a reasonable time. Now, maybe maybe the time we're talking about here is not a reasonable time. But surely you can't just forget that someone said, I'll kill you if you file a complaint and then say, OK, I've got two years to file the complaint. I'm smiling because it's there's no case on point that gets to the answer to your question. Judge Hart's because all of the cases that describe estoppel by duress begin basically start from the starting point saying that's not a thing. But if it was, it wouldn't work here. And so we don't have a case on point that says these threats do apply for the for the estoppel period. And they say it wouldn't work here because the threat wasn't strong enough or. Or no, it just they uniformly say that doesn't work beyond the last act. And and does the case of Judge Garcia mentioned that you didn't cite it? Does it also have that alternative analysis or does it just flat out say there is a estoppel by duress? I can't answer your question because I don't recall the details. Who decides the question? Is it a judge question or a jury question? It's a judge question, Judge. What are you saying is the judge question? Is are are the facts as alleged something that a plaintiff can reasonably rely on to delay in some instances 23 years before filing your lawsuit? The answer to that is it's question of law. And the answer is no, you can't. The question of law being that the estoppel stops at the right right after the last threat. That's that's a you say that's a Kansas proposition of law. Actually, I'm saying two things. One, it's not a thing at all. Okay. And two, even if it were, it wouldn't work here because of the delay between the last act and the filing of the lawsuit. I'm confused when you say it's not a thing at all. I thought you conceded that under Kansas law, there could be a estoppel by threat. It's conceptual. There is no Kansas case that says it on four corners that I am aware of in a civil context. Well, let me just read you two lines from this case. Did the threats in the incident case result in depriving Apelli of the free exercise of his will? Well, that is always a question for the jury. The evidence to establish duress must be substantial. And that's a whole that's from several different paragraphs talking about estoppel by duress. I remember reading that case. I just can't remember all of that. Yes. Okay. And I guess I'm just trying to figure out the import of that case to the arguments here. And here, you've got to look to the four corners of the complaint and see what the allegations are. And those allegations are not enough to invoke estoppel. As to? As to my clients.  And as I understand, that's the point. As I understand your argument, you're not, as I understand now, conceding that Kansas law actually blesses estoppel by duress. But you're saying if it does, it doesn't apply here. That is correct. Okay. And my principal brief does say Kansas law does not recognize it in this context. But I also concede and include the quotes that say acts. Okay. And bottom line is I don't think you need to certify any questions. And I will say I've been the victim of where certification motion didn't happen in the district court. It did at this level. And the motion was granted. So I know it can happen. I just don't think it should because I don't think this is a hard question for us. Well, I'm going to respond to that because I don't think there's so many ways that a case can be decided in the district court. And the state supreme court is not going to take certification when the issue could well be mooted by what goes on in district court. So I'm not a fan of saying that if you didn't do it in district court, you shouldn't be allowed to do it in circuit court. I think that's where you should be doing it. I don't disagree with you. I may be in the minority. I just say certification is not appropriate because it's not a dispositive question. Because even if it was a thing, it's not going to get plaintiff relief in this case. I understand. Thank you, Your Honors. You've been very generous with the time. Case has been submitted. What? I think you promised to move it. Oh, did I? I'm sorry. Well, you went five minutes. But yes, go ahead. Give him a minute. I know we went way over. Then I misunderstood. No, I apologize. I apologize. Go ahead and give him a minute, Kevin. Thank you for your grace. No misunderstanding here. Go ahead. I just, the issue of whether it's a judge question or jury question, it's the plausibility standard. That gets past the judge hurdle. Once we're over plausibility and this comprehensive complaint more than gets us there. I think what I heard was estoppel by duress does exist in Kansas. And defendants agree to that. But they just don't think it applies to them because there's not a direct threat from them. I think he hedged. I think he said it's a possibility. But if it does, it doesn't apply. Sure. Hedge is probably more benevolent. But I think that takes us to the certification question then of the overlap between Kansas conspiracy law and Kansas estoppel law. Because conspiracy law, and this is Brinkler, which is Kansas Court of Appeals from 2023. It's 538P3D1101. An act by any conspirator becomes an act of all. And each is responsible for such act. And if that's good for an element of a claim, it's good for an equitable doctrine under Kansas law. I know I've already expended a massive amount of time with you. So thank you. I appreciate it. No, of course. Case is submitted. Thank you, counsel. The court will be in recess until 9 a.m. tomorrow.